## John A. Crouse v. Archibald W. McCandless.
### Gen. No. 11,819.

1. PARTNERSHIP—*when right exists to return of premium upon dissolution of partnership prior to term fixed.* The general rule is that where a partnership is created for a specified time and determined by a dissolution by mutual consent before the expiration of that time, then in the absence of a provision in the original articles of agreement for return of any part of the premium upon any contingency, the party who paid it is not entitled to the return of any part of it unless the dissolution agreement, as in this case, so provides.

2. PARTNERSHIP—*what equity will consider in fixing terms of dissolution.* Where parties have agreed to dissolve a partnership but have left the terms of dissolution for further agreement between themselves, upon their failing to agree, a court of equity will fix such terms and, in such connection, will inquire into the matters preceding the agreement by which the dissolution was effected, will examine the contract of partnership to ascertain if there was any fraud in its inception, and consider such other matters as will aid it in making an equitable adjustment.

Bill for accounting, etc. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed and remanded. Opinion filed June 20, 1905.

**Statement by the Court.** This is a bill for an accounting and other relief between former partners. The copartnership was evidenced by an agreement in writing dated March 31, 1896, signed by each of the parties. The agreement recites among other things that appellant had been engaged in the practice of dentistry in Chicago over twenty-seven years and had built up a large business; that appellee had been a dentist in Chicago three years, and that the good will of appellant's business was agreed to be valuable and worth with his time about $50,000; that appellant on account of other business was desirous of liberty to devote only such part of his time as he might deem proper to the copartnership business, and therefore made a concession as to the value of his business of about $10,000, which the parties agreed to; that the partnership should commence April

1, 1896, and continue five years, and that the parties were to share all expenses and earnings equally. It was agreed that appellee should pay appellant $15,000 "for the said copartnership and interest in the practice and business," of which sum according to the contract, "he has paid by conveyance of certain real estate, $10,350, leaving $4,650 to be paid out of his share of the net income, which shall be paid to party of the first part (appellant) over and above $5,000 per annum until paid."

After an experience of eighteen and one-half months, the parties concluded that the partnership should be discontinued and executed the following:

"Chicago, Oct. 15, 1897.

"We, the undersigned, wish to dissolve the partnership in the practice of dentistry now existing under the name of Crouse & McCandless by mutual consent, the terms of dissolution and settlement to be agreed upon hereafter, but the dissolution to take effect the 1st of October last.

(Signed)    J. A. CROUSE,
           A. W. McCANDLESS."

The bill states that the complainant (appellee) deeded certain real estate to appellant at an agreed valuation of $10,-350 and gave his promissory note for $4,650 in payment of the premium which by the articles of copartnership he was to pay appellant for the interest acquired in the business, which real estate and note appellant still retains. Appellee prays for an accounting both as to the earnings of the copartnership and the premium paid by appellee, and that appellant be decreed to cancel and surrender the note received by him from appellee and "either be compelled to deed complainant the real estate given him or pay the complainant the value thereof."

The decree finds the equities with the complainant and recites that after the dissolution by agreement, the parties were unable to agree upon the terms of dissolution, that complainant insisted as shown by his bill, that the articles of copartnership should have been rescinded for fraud and that

he should be permitted to have a return of the bonus paid and an equal share of the earnings; that defendant had offered to deed back to complainant the property conveyed to him, and to return to complainant his note for $4,650 upon complainant paying to defendant such proportion of the premium or bonus as the period of copartnership (one year and six months) bore to the whole term of five years mentioned in the partnership contract. The court finds that there was no such fraud as entitled complainant to set aside and rescind the contract of partnership, but that the dissolution was without fraud or misconduct of complainant, and that the latter is entitled to recover the unearned part of the premium in the proportion which eighteen months, during which the partnership continued, bears to five years, the time provided for its continuance by the articles of agreement; and that this unearned portion of the bonus is $10,500, for which amount complainant is entitled to credit in the accounting. The court also finds, there being apparently no controversy in this regard, that appellant has in his hands $3,712.14 of the receipts of the partnership over and above his share, which sum is due from him to appellee.

JOHN S. COOPER, for appellant.

ASHCRAFT & ASHCRAFT, for appellee; E. M. ASHCRAFT, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The bill of complaint alleges that appellant misrepresented to appellee the value and good will of his business before the partnership was formed, and that afterwards appellant violated the terms of the partnership agreement. Appellee claims therefore to be entitled to rescind the original articles of partnership for fraud, and to be entitled to recover the entire bonus or premium which he agreed to pay and also such share of the profits not less than one-half as in equity the court may find him entitled to. The decree, however, does not sustain this contention. It finds that under the evidence appellee is not entitled to have the original contract

set aside and rescinded for misrepresentation or fraud, but finds also that appellant's conduct while the partnership continued made it necessary for appellee to consent to the dissolution, and it awards appellee the unearned portion of the premium.

It is contended in behalf of appellant that appellee is not entitled to the return of any part of the premium, the copartnership having been dissolved by mutual consent, and that the decree is erroneous in that respect. By the agreement of the parties dated October 15, 1897, the dissolution by mutual consent took effect the first of that month. The matters left open by that agreement were "the terms of dissolution and settlement to be agreed upon hereafter." These terms the parties have been unable to agree upon and because of the failure so to agree it becomes necessary under this bill for a court of equity to do for them what they are unable to do for themselves. So far as necessary for that purpose the court may inquire into matters preceding the agreement by which the dissolution was effected. It may examine the contract of partnership, inquire whether there was any fraud in its inception entitling appellee to have it rescinded, and into such other matters as will aid in an equitable adjustment of these "terms of dissolution and settlement." But the chancellor having found, and we think correctly, that there was no fraud in the inception of the partnership, it became immaterial to inquire into the disagreements or differences which arose between the partners while the partnership continued. This is not a bill for dissolution. The parties themselves agreed in writing to dissolve and did dissolve the partnership. They had a right to so agree, and having done so of their own accord it is of no consequence what the reasons were which led them to so agree. We are not called upon to weigh in the balance their conduct toward each other as partners and apportion with nice precision the share of blame, if any, to be attached to each. So far as the decree endeavors to do this it must be regarded as erroneous, and we shall not undertake, therefore, to review the evidence upon which such findings are based. The ques-

tion as to appellee's right to a return of the premium does
not depend upon the conduct of the parties toward each other
during the partnership. As we have said, this is not a case
where a partnership is to be dissolved by a court of equity
upon complaint of either party. The dissolution is an ac-
complished fact brought about by the parties of their own
accord and by mutual consent. In Lee v. Page, 30 Law
Jour. Chancery, 857-858, where similar conditions existed,
the court said: "This was an unconditional dissolution by
agreement, and neither party could afterwards enter into
any question of what the conduct of the other had been, or
insist upon his right adversely, such right having been
abandoned by the unconditional dissolution." In that case
it was held that the right to return of any part of the pre-
mium paid by one party to the other when the partnership
was formed, would be determined by the articles of copart-
nership, and "on referring to the articles it appeared that no
provision was made on that subject in the event of an ad-
verse or other dissolution. Under these circumstances the
plaintiff had no right to a return of any part of the pre-
mium." To the same effect is Akhurst v. Jackson, 1st Swans-
ton's Reports, 85-89, where a partnership was determined
by the bankruptcy of one of the parties before the expiration
of the partnership period. The assignees of the bankrupt
filed a bill against the other partners to recover unpaid in-
stallments of the premium which by the partnership contract
the latter had agreed when the partnership was formed to
pay the bankrupt, in consideration of being admitted into the
business. The Master of the Rolls said: "The parties might
have provided by their agreement" for the contingency which
had arisen, "but no such provision is made." "Upon admis-
sion the whole price became, according to the terms of the
agreement, *debitum in presenti,* although *solvendum in fu-
turo.* In equity as well as at law the contract has been per-
formed and the consideration has been paid." In Lindley on
Partnership, Vol. 1, star page 66, cited by appellee's counsel
in their brief, it is said: "Where a partnership is entered
into for a specified time and is determined prematurely, the

first matter for consideration is whether the parties have come to any agreement on the dissolution. If they have, and if they have also provided for the premium, it must be dealt with according to the agreement; but if the agreement on dissolution is silent with respect to the premium, the inference is that the parties did not intend to deal with it nor to vary their rights to it under the original agreement." In the case at bar the parties have come to an agreement on the dissolution, and the general rule is that where a partnership is created for a specified time and determined by a dissolution by mutual consent before the expiration of that time, then in the absence of a provision in the original articles of agreement for return of any part of the premium upon any contingency, the party who paid it is not entitled to the return of any part of it unless the dissolution agreement so provides. Astle v. Wright, 23 Beavan 77, cited by appellee's counsel, was a bill for dissolution of partnership, instead of for a mere accounting, as here, following a dissolution by the parties by mutual consent. The same may be said of Atwood v. Mande, Law Rep. 3 Chan. App., 369-372; Lyon v. Twiddell, 17 Ch. Div. 529, and Jauncey v. Knowles, 29 Law Jour. Ch. 95.

In the case at bar, however, the rule referred to is no longer applicable, because when the parties agreed to dissolve they expressly provided in their agreement that "terms of dissolution and settlement" were left open to be agreed upon thereafter. While this provision does not expressly refer to the premium, its scope included all unadjusted matters of the partnership. The latter having been dissolved by agreement before the expiration of the term for which the bonus or premium was to be paid, such premium was only partly earned. A part of it was still unpaid. What part, if any, was so earned, its actual value, and the terms upon which it should be settled, were as properly comprehended within the "terms of dissolution and settlement to be agreed upon" as the division or sale of partnership assets, the undivided profits, or the collection of outstanding accounts. The parties themselves so construed it and acted accordingly, but

having failed to agree these matters are now to be equitably adjusted by the court to which they have been submitted for that purpose. Before the bill was filed appellant proposed as a basis of settlement the return to appellee of the latter's real estate and note, appellee to pay the proportion of the premium represented by the time the partnership had continued. The chancellor considered this an equitable basis of settlement and so decreed. It is not seriously contended on either side that if appellee is entitled to the return of any part of the premium, the decree is erroneous in this respect.

Appellant objects, however, most earnestly to the method which the decree adopts for repayment of the proportion of the premium to be returned to appellee. It is urged that while the bonus or premium was nominally $15,000, it was in fact much less than that sum; that appellant accepted encumbered real estate in lieu of $10,350 of the premium, that this real estate was not worth over and above the encumbrances to exceed at the highest estimate about $3,000; and that the total premium agreed to be paid, including appellee's as yet unpaid note of $4,650, did not exceed in value about $7,650. The decree treats the premium as if the full $15,000 had been paid in cash; and after deducting from it appellee's unpaid note of $4,650 with interest thereon and directing the return of the note to appellee, deducting also the proportion which it is found appellant is entitled to retain of the premium earned during the eighteen months the partnership continued, the decree charges appellant with the sum of $5,431.50, which he is required to pay back to appellee in money. Appellant complains that he is thus required to retain appellee's encumbered real estate as so much cash and is compelled to pay appellee $10,350 for it instead of being allowed to return it as he received it, although it was never worth and is not now worth any such amount. We think this objection is well taken. There is evidence uncontradicted tending to show that the equities in the real estate in question were worth when conveyed to appellee from one to three thousand dollars. It is certainly inequitable to now compel appellant to retain them at a

valuation of $10,350 unless such was his absolute uncon-
ditional agreement.    If he is to be regarded as having
agreed so to do appellee should also be regarded as
having agreed to pay the whole $15,000 premium ab-
solutely and unconditionally, whether the partnership
was prematurely dissolved or not.    If the latter is en-
titled by reason of the dissolution agreement to have the
"terms of dissolution and settlement" equitably adjusted and
the unearned portion of the premium returned, appellant
is equally entitled to a like equitable adjustment as to the
real estate.  He who seeks equity must do equity.  To award
appellant nominally the earned portion of three-tenths of the
premium, while compelling him to return that portion of
it represented by appellee's note for $4,650, and at the same
time to retain the real estate and pay appellee for it not only
its full value, but several thousands of dollars in money be-
side, is in effect to deprive appellant of the entire premium,
to give it all back to appellee and bestow upon the latter a
large bonus beside.  All the premium that appellee ever gave
over and above his unpaid note, according to undisputed evi-
dence, did not exceed $3,000 in actual value of the real es-
tate.

It would be difficult to devise a method more effectually
to keep the word of promise to the ear and break it to the
hope.  The decree while pretending to award appellant
three-tenths of the premium actually gives him nothing, and
takes away from him even that which he hath.  The amount
which appellant is thus required by the decree to pay ap-
pellee in money is arrived at by charging the latter with
$418.50 interest on his said note of $4,650 and with $4,500
of the premium treated as earned for appellant in the eight-
een months duration of the partnership, making $9,568.50,
which deducted from $15,000 leaves appellee, it is said, en-
titled to recover from appellant $5,431.50 to be paid by ap-
pellant in money.  The same result is reached if to the three-
tenths of the premium nominally awarded appellant—being
$4,500—is added the interest allowed him on appellee's
note, making $4,918.50, and this is deducted from $10,350,

the nominal valuation of the real estate. The result is to make appellant pay appellee $10,350 for real estate worth perhaps about $3,000. It appears from the evidence that when the articles of copartnership were under consideration it was agreed between the parties "that $15,000 would be about a fair premium or bonus for a half interest—five year interest" to be paid by appellee; that the latter told appellant he did not have any money then and would have to turn over some land; that he proposed the two pieces of property subsequently conveyed to appellant subject to mortgages, one of $4,500 bearing six per cent. interest and the other of $5,000 bearing seven per cent. interest. Appellant states that he did not know anything about the value of this real estate, that he told appellee it was not so much the property, but appellee and his services, that he wanted. He had his brother-in-law look at the property and took it at the valuation stated, which was apparently fixed without consideration of the encumbrances. Appellee testifies that he originally paid for the equity in one of the pieces of real estate about $5,000 in cash and $2,000 for the equity in the other. The evidence tends to show, therefore, that the equities in real estate which appellant took as an equivalent for $10,350 did not cost appellee to exceed $7,000 when he originally acquired them, and the testimony is uncontradicted, as we have said, that the value at the time of the transfer to appellant did not exceed about $3,000, and that at the time of the hearing the value had not at the most increased to exceed ten per cent. There is evidence tending to show that it has cost appellant to carry the property nearly $2,000 more than he has received from it.

In his bill of complaint appellee prays that appellant be decreed to cancel and surrender the note of $4,650 and "either be compelled to deed complainant the real estate given him or pay the complainant the value thereof." There is also a prayer for general relief. We are of opinion that appellee is entitled equitably to have the specific relief he prayed for, as to reconveyance of the land. He conveyed it to appellant at an estimated valuation of $10,350. There

is evidence, as above stated, tending to show that it has not decreased in value since that time, and that there has been a slight increase. But whether so or not, it should be reconveyed to him by appellant and he should be charged therefor with the price, $10,350, which he was allowed for it, and this should be credited on the $10,500 to be returned to him as seven-tenths of the original premium or bonus which he agreed to pay. This will leave a balance of $150 still due him on account of return premium, to which should be added the balance due appellee from appellant on account of surplus earnings, which the accounting shows to be $3,712.14; making a total due appellee from appellant at date of dissolution of $3,862.14.

The original articles of copartnership provided that the $4,650 for which appellee gave his note to appellant should "be paid out of his share of the net income, which shall be paid to party of the first part over and above $5,000 per annum until paid." The note drew interest at the rate of 6 per cent per annum. Appellant is entitled to the interest on the note to the date of dissolution. This was found to be $418.50. He is also entitled to be paid the excess of appellee's "share of the net income" to the time of dissolution "over and above $5,000 per annum." Appellee's share of this net income during the partnership was $8,753.83 as found by the accounting. This exceeded the "$5,000 per annum" or $7,500 which he was entitled to retain for the eighteen months of partnership, to the amount of $1,253.83. This excess added to the interest on the note ($418.50) makes $1,672.83 due appellant from appellee on the latter's note at the date of dissolution, which deducted from the $3,862.14 due appellee from appellant as above stated leaves a balance of $2,189.31 for which appellee is entitled to a decree.

He is further entitled to have the note delivered up and cancelled, inasmuch as the parties having agreed that it should be paid out of the excess of appellee's earnings, and with knowledge of that agreement having dissolved the partnership thereby making it impossible for it to be paid in

that way, will be presumed to have intended to cancel so much of it as was not due and payable at that time. By this adjustment of the equities the agreement between the parties will be enforced substantially as they made it as nearly as may be. Appellee will receive back his real estate at his own estimate of its value and appellant will receive payment of so much of appellee's note as by his own agreements he is entitled to. On the basis of actual values each will receive about the proportion of the share of the nominal premium to which he is entitled. We are of opinion that under the circumstances appellant having had the management and control of the real estate is not entitled to be reimbursed for any excess of expenditures over receipts if any such there was, nor should he be compelled to account for any excess of receipts if there was any.

For the reasons indicated the decree of the Superior Court must be reversed and the cause remanded for proceedings not inconsistent with the views above expressed.

*Reversed and remanded.*